FILED IN OPEN COURT
ON __4/8/26 BRH__
Peter A. Moore, Jr., Clerk
US District Court
Eastern District of NC

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:26-CR-53-M-RN

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | I N D I C T M E N T |
| | ) | |
| COURTNEY P. WILLIAMS | ) | |

The Grand Jury charges that:

Introduction

1.     From 2010 to 2016, COURTNEY P. WILLIAMS worked for a Special Military Unit ("SMU") at Fort Bragg in the Eastern District of North Carolina. In that role, WILLIAMS maintained a Top Secret, Sensitive Compartmented Information security clearance and served in a role that required frequent and ongoing access to highly classified national defense information.

2.     Upon assuming her position at the SMU in 2010, WILLIAMS received a briefing wherein she agreed to "never divulge, publish, or reveal" any classified information without authorization.  Moreover, as a security clearance holder, WILLIAMS underwent periodic training on the proper handling, safeguarding, and storage of classified information.  Additionally, WILLIAMS signed a classified nondisclosure agreement while serving at the SMU.  WILLIAMS knew that the unauthorized disclosure of classified information was against the law.

3.     Beginning in January 2022 and continuing until at least August 2025,

WILLIAMS was in frequent contact with a reporter and author ("Reporter 1"). During this period, WILLIAMS exchanged hundreds of text messages with Reporter 1 and had more than ten hours of telephone calls. Following these interactions, Reporter 1 published a book and a related article that contained classified national defense information. The article and book identified WILLIAMS as a source for this classified information.

4.     On the same day the article was published, WILLIAMS sent a message to Reporter 1 stating that "I wish you had sent me a copy of what was to be published prior to publishing" because "I would definitely have been concerned with the amount of classified information being disclosed." Later that same day, WILLIAMS sent a message to a third party stating that "I might actually get arrested . . . for disclosing classified information." In a subsequent message, WILLIAMS cited a statutory provision within the Espionage Act. And when asked how she knew she might face legal consequences for disclosing classified information to Reporter 1, WILLIAMS wrote, "I have known my entire career," adding that "they tell you everyday . . . 100 times a day." Finally, in a message to a different third party, WILLIAMS stated that because "[s]o much classified information [had been] released" in the article and book, she was "probably going to jail . . . ."

5.     Concurrent to her relationship with Reporter 1, WILLIAMS also created and operated accounts on several popular social media networks. WILLIAMS disclosed classified national defense information via those accounts.

<u>Classified Information</u>

6.     At all times relevant to this Indictment, Executive Order 13526 governed the classification of national security information. Information in any form may be classified if it: (1) is owned by, is produced by or for, or is under the control of the U.S. Government; (2) could, if disclosed, cause one or more specified levels of harm to the United States; and (3) is classified by or under an original classification authority ("OCA") who determines that its unauthorized disclosure reasonably could be expected to result in damage to the national security.  OCAs, also called original classifiers, were individuals authorized to classify information and make classification decisions.

7.     Pursuant to Executive Order 12958 signed on April 17, 1995, as amended by Executive Order 13292 on March 25, 2003, and Executive Order 13526 on December 29, 2009, national security information was classified as "TOP SECRET," "SECRET," or "CONFIDENTIAL." National security information was information owned by, produced by, produced for, and under the control of the U.S. Government that was classified as follows:

   a. Information was classified as TOP SECRET if the unauthorized disclosure of that information reasonably could be expected to cause exceptionally grave damage to the national security that the OCA was able to identify and describe.

   b. Information was classified as SECRET if the unauthorized disclosure of that information reasonably could be expected to cause serious

damage to the national security that the OCA was able to identify and describe.

    c. Information was classified as CONFIDENTIAL if the unauthorized disclosure of that information reasonably could be expected to cause damage to the national security that the OCA was able to identify and describe.

8. Under Executive Order 13526, "damage to the national security" meant harm to the national defense or foreign relations of the United States from the unauthorized disclosure of information, taking into consideration such aspects of the information as the sensitivity, value, utility, and provenance of that information.

9. The classification marking "NOFORN" indicated that the information was "Not Releasable to Foreign Nationals" and dissemination of that information was limited to United States persons.

10. Pursuant to Executive Order 13526, information classified at any level could only be lawfully accessed by persons determined by an appropriate U.S. Government official to be eligible for access to classified information, who had signed an approved non-disclosure agreement, received a security clearance, and had a "need to know" the classified information. Classified information could only be stored in an approved facility and container.

COUNT ONE

Between on or about July 1, 2022, and on or about August 12, 2025, in the Eastern District of North Carolina and elsewhere, the defendant, COURTNEY P.

WILLIAMS, lawfully having possession of, access to, control over, and being entrusted with information relating to the national defense classified as SECRET//NOFORN, specifically a cover alias identity issued and owned by the Special Military Unit stationed at Fort Bragg, North Carolina, which information the defendant had reason to believe could be used to the injury of the United States, did unlawfully, knowingly, and willfully communicate, deliver, and transmit such information, and cause such information to be communicated, delivered, and transmitted, to a person or persons not entitled to receive it, to wit: the viewers of a social media account owned and controlled by WILLIAMS.

All in violation of Title 18, United States Code, Section 793(d).

## COUNT TWO

Between on or about January 10, 2022, and on or about August 12, 2025, in the Eastern District of North Carolina and elsewhere, the defendant, COURTNEY P. WILLIAMS, lawfully having possession of, access to, control over, and being entrusted with information relating to the national defense classified as SECRET//NOFORN, specifically tactics, techniques, and procedures used by a Special Military Unit stationed at Fort Bragg, North Carolina to execute covert missions without being detected, which information the defendant had reason to believe could be used to the injury of the United States, did unlawfully, knowingly, and willfully communicate, deliver, and transmit such information, and cause such information to be communicated, delivered, and transmitted, to a person or persons

not entitled to receive it, to wit: Reporter 1, who subsequently published this classified national defense information in a news article and a book.

All in violation of Title 18, United States Code, Section 793(d).

## COUNT THREE

Between on or about January 10, 2022, and on or about August 12, 2025, in the Eastern District of North Carolina and elsewhere, the defendant, COURTNEY P. WILLIAMS, lawfully having possession of, access to, control over, and being entrusted with classified information relating to the national defense, specifically the true names of individuals assigned to a Special Military Unit stationed at Fort Bragg, North Carolina, and their capture during a sensitive military mission in a foreign country, which information the defendant had reason to believe could be used to the injury of the United States, did unlawfully, knowingly, and willfully communicate, deliver, and transmit such information, and cause such information to be communicated, delivered, and transmitted, to a person or persons not entitled to receive it, to wit: Reporter 1, who subsequently published this classified national defense information in a book.

All in violation of Title 18, United States Code, Section 793(d).

## COUNT FOUR

On or about January 26, 2026, in the Eastern District of North Carolina and elsewhere, the defendant, COURTNEY P. WILLIAMS, lawfully having possession of, access to, control over, and being entrusted with classified information relating to the national defense, to wit: specifically tactics, techniques, and

procedures used by a Special Military Unit stationed at Fort Bragg, North Carolina, to execute sensitive missions without being detected, as well as that the Special Military Unit stationed at Fort Bragg, North Carolina maintains relationships with private companies to shape the information environment, which information the defendant had reason to believe could be used to the injury of the United States, did unlawfully, knowingly, and willfully communicate, deliver, and transmit such information, and cause such information to be communicated, delivered, and transmitted, to a person or persons not entitled to receive it.

All in violation of Title 18, United States Code, Section 793(d).

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

## FORFEITURE NOTICE

Notice is hereby given that all right, title and interest in the property described herein is subject to forfeiture.

Upon conviction of any violation of Section 793 of Title 18 of the United States Code, the defendant shall forfeit to the United States, pursuant to 18 U.S.C. § 793(h), irrespective of any provision of State law, any property constituting, or derived from, any proceeds obtained, directly or indirectly, from any foreign government, or any faction or party or military or naval force within a foreign country, whether recognized or unrecognized by the United States, as the result of such violation.

Upon conviction of any offense charged herein constituting "specified unlawful activity" (as defined in 18 U.S.C. §§ 1956(c)(7) and 1961(1)), or a conspiracy to commit such offense, the defendant shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C), as made applicable by 28 U.S.C. § 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the said offense.

The forfeitable property includes, but is not limited to, the following:

Forfeiture Money Judgment:

a.    A sum of money representing the gross proceeds of the offense(s) charged herein against Courtney P. Williams, in the amount of at least $15,000.

If any of the above-described forfeitable property, as a result of any act or omission of a defendant: cannot be located upon the exercise of due diligence; has been transferred or sold to, or deposited with, a third party; has been placed beyond

the jurisdiction of the court; has been substantially diminished in value; or has been commingled with other property which cannot be divided without difficulty; it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of said defendant up to the value of the forfeitable property described above.

REDACTED VERSION
Pursuant to the E-Government Act and the federal rules, the unredacted version of this document has been filed under seal.

FOREPERSON

DATE: 4/8/2026

W. ELLIS BOYLE
United States Attorney

BY: LOGAN W. LILES
Assistant United States Attorney